UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

)
DONNA DINAPLES            )
       Plaintiff,         )
                          )
       v.                 )
                          )   C.A. No. 2:15-cv-01435-MAP
MRS BPO, LLC,             )
       Defendant.         )
                          )


**MEMORANDUM AND ORDER ON MOTIONS FOR
SUMMARY JUDGMENT AND MOTION FOR CLASS CERTIFICATION**
(Dkt. Nos. 62, 63, and 65)

November 21, 2017

PONSOR, U.S.D.J.[1]

### I. INTRODUCTION

Plaintiff brings suit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") against Defendant debt collector, MRS BPO, LLC ("MRS"). Plaintiff and Defendant both move for summary judgment on liability. Plaintiff also moves for class certification. For the reasons set forth below, Plaintiff's motion for summary judgment will be allowed, Defendant's motion will be denied,

---

[1] The undersigned, a Senior U.S. District Judge in the District of Massachusetts (Western Division), is presiding over this case pursuant to 28 U.S.C. § 294(d).

and Plaintiff's motion for class certification will be allowed.

## II. FACTUAL BACKGROUND

The facts are essentially uncontested. To the extent disputes may exist, the facts are viewed in the light most favorable to the non-moving party.

On or about November 4, 2014, Defendant mailed Plaintiff a collection letter that displayed a Quick Response Code ("QR Code") on the outside of the envelope. It is undisputed that a QR Code may be scanned by a widely available QR Code reader downloadable to a cell phone. It is further undisputed that, through the use of such a reader, Plaintiff's unencrypted account number -- the number used by Defendant to identify Plaintiff for its own purposes -- would be displayed. Plaintiff contends that this disclosure of her account number through the QR Code constituted a violation of the FDCPA.

## III. DISCUSSION

A. Cross Motions for Summary Judgment.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 317 (1986). Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Sorba v. Pennsylvania Drilling Co., 821 F.2d 200, 202 (3d Cir. 1987) (quoting Celotex, 477 U.S. at 317). The movant bears the burden of establishing no genuine issue of material fact. Celotex, 477 U.S. at 323. If the movant meets the burden, the nonmovant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Id. at 323-24.

The FDCPA was enacted in 1977 "to eliminate abusive debt collection practices by debt collectors." Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3d Cir. 2015). The statute prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any

debt." 15 U.S.C. § 1692f. The list of prohibited means includes: "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer . . . , except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." Id. at § 1692f(8).

The question before the court is whether Defendant violated the FDCPA by sending Plaintiff a collection letter with her account number embedded in the QR Code on the face of the envelope. The critical case governing this analysis is Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014).

In Douglass, the Third Circuit held that a debt collector's disclosure of a debtor's account number visible through the clear plastic window of an envelope violated the FDCPA. Defendant would distinguish Douglass on the ground that the QR Code "itself is nothing more than black markings against white paper," lacking any "independent meaning without being scanned". (Dkt. No. 62-1 at 8.) Since even a scan would reveal only an unlabeled string of numbers, "nothing about the scan results" would reveal that "the

number is an account number or relates to debt collection."
(Id. at 9.)

This attempt to avoid the Douglass holding does not add up. If the display of an account number on an envelope constitutes a violation of the FDCPA, then it is difficult to see how a coded insignia containing the same account number, accessible by any teenager with a smartphone app, does not constitute a similar forbidden disclosure.

Numerous district courts in the Third Circuit have already reached this conclusion.[2] See Styer v. Prof'l Med. Mgmt., Inc., 114 F. Supp. 3d 234, 241 (M.D. Pa. 2015) (stating that "disclosure of [a] QR code [containing] Plaintiff's account number ... implicates a core concern animating the FDCPA, specifically the invasion of privacy"); Park v. ARS Nat'l. Servs. Inc., No. 15-02867, 2015 WL

---

[2] Very recently, the Third Circuit itself approached the issue of a disclosure through a readable QR Code, in Daubert v. NRA Group, LLC, 861 F.3d 382 (3d Cir. 2017). In that case, the District Court had held that display by a debt collector of a barcode with an embedded account number on an envelope to a debtor violated § 1692(f)(8), "even if the bare account number had not been visible." Id. at 393. Because that conclusion was not challenged upon appeal, however, the Third Circuit reserved judgment on the lower court holding.

6579686, at *4 (D.N.J. Oct. 30, 2015) (stating that "this Court cannot draw a meaningful distinction between the FDCPA's application to account numbers, as in Douglass, and to barcodes containing account numbers, as in the instant case"); Stever v. Harrison, No. 16-298, 2017 WL 2869505, at *6 (D.N.J. July 5, 2017); Berry v. ARS Nat'l. Servs., Inc., Nos. 15-1529, 15-2611, 15-2883, 2015 WL 9315993 (E.D.Pa. Dec. 23, 2015); Palmer v. Credit Collection Services, Inc., 160 F. Supp. 3d 819 (E.D.Pa. 2015); Kostik v. ARS Nat'l. Servs., Inc., No. 14-2466 2015 WL 4478765 (M.D. Pa. July 22, 2015); In re ACB Receivables Mgmt., No. 14-6418, 2015 WL 5248567 (D.N.J. Sept. 9, 2015); and Link v. ARS Nat'l. Servs., Inc., No. 15-643, 2015 WL 8271651 (W.D. Pa. Dec. 8, 2015).

In an attempt to push back against this wall of authority, Defendant argues that Plaintiff has not established that she suffered a concrete injury, insofar as she does not allege that she or any members of the proposed class were harmed by the QR Code, or that anyone has, in fact, ever scanned the code. Again, this argument is unpersuasive. The injury suffered by Plaintiff is the

disclosure of confidential information.  To invoke the
FDCPA, she does not have to identify harm quantifiable in
dollars and cents.  <u>Douglass</u> makes clear that to prove an
FDCPA violation, Plaintiff need only demonstrate the
potential harm that a disclosure could have had upon her.
"The account number is a core piece of information
pertaining to [plaintiff's] status as a debtor and to
[Defendant's] debt collection effort.  Disclosed to the
public, it <u>could be used</u> to expose her financial
predicament."  <u>Douglass</u>, 765 F.3d at 303, 304 (emphasis
added).  The relevant test "is not whether a third party
could lawfully access the disclosed information," but
whether that information "was disclosed to the public and
thus, there for the taking."  <u>Styer</u>, 114 F. Supp. 3d at 243.
Defendant's disclosure of confidential information protected
under the FDCPA is per se sufficient to sustain a finding of
a violation of the statute.  The degree of harm, of course,
may factor into any assessment of damages, but liability is
clear.

In a further effort to fend off summary judgment,
Defendant invokes the "benign or harmless language"

7

exception under the FDCPA. <u>Goswami v. American Collections Enterprise, Inc.</u>, 377 F.3d 488, 494 (5th Cir. 2004). The factual pattern presented by this case, however, bears little resemblance to those where this exception has been successfully invoked. In these cases, debt collection letters featured labels on the envelope including: "priority letter", <u>id.</u> at 493-4; "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED", <u>Strand v. Diversified Collection Serv., Inc.</u>, 380 F.3d 316, 319 (8th Cir. 2004); "Revenue Department", <u>Johnson v. NCB Collection Servs.</u>, 799 F. Supp. 1298, 1305 (D. Conn. 1992), on reconsideration (Aug. 21, 1992). By contrast, "disclosure[s] implicat[ing] a core concern animating the FDCPA -- the invasion of privacy" would not fall under the benign language exemption. <u>Douglass</u>, 765 F. 3d at 303. The simple fact is that disclosure of an account number is not "benign" under the statute, and this exception does not apply.

Defendant's final argument is that the disclosure occurred as a result of bona fide error and despite its own maintenance of procedures reasonably adapted to avoid such error. This appeal to the bona fide error defense must also

be rejected. The Third Circuit has made clear that "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." <u>Allen ex rel. Martin v. LaSalle Bank, N.A.</u>, 629 F.3d 364, 368 (3d Cir. 2011). Even if this defense were available to Defendant, <u>Daubert</u> makes clear that it may apply where a defendant can point to, for example, a clerical error, but not where an alleged violation results from deliberate conduct based upon a mistake of law. 861 F. 3d at 393-94. Defendant has not alleged that the barcode was stamped in error upon the envelope by an errant employee or the like. In fact, it admits it was company -- and indeed, industry -- policy to do so. Given that Defendant's conduct was intentional, the bona fide error defense offers Defendant no protection.

Based on the foregoing, the court will allow Plaintiff's motion for summary judgment on liability, and deny Defendant's motion.

B. <u>Class Certification</u>

Plaintiff seeks certification of the following Class pursuant to Fed. R. Civ. P. 23:

> All consumers with an address in Westmoreland County who, beginning November 2, 2014 through and including the final resolution of this case, were sent one or more letters from Defendant attempting to collect a consumer debt allegedly owed to Chase Bank, which displayed on the outside of the mailing a Quick Response ("QR") Code containing the account number associated by Defendant with that consumer's account.

(Dkt. No. 64 at 14.)

To certify a class, a court must determine whether plaintiffs meet the four threshold requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). A putative class must also meet the "essential prerequisite" of ascertainability, meaning that it must be defined with reference to objective criteria, and a reliable and administratively feasible mechanism must exist for determining whether putative class members fall within the class definition. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-3 (3d Cir. 2012). Where a plaintiff in a class action suit seeks monetary compensation, certification also imposes the prerequisites of predominance and superiority. Sullivan v. DB Investments, Inc., 667 F.3d 273, 296 (3d Cir. 2011); Fed. R. Civ. P. 23(b)(3).

A review of the record confirms that Plaintiff has met

all these requirements. First, as to numerosity, similar letters were mailed to approximately 264 consumers in Westmoreland County; second, the putative class shares common questions of fact and law; third, class members can be easily identified through a review of Defendant's records; fourth, Plaintiff's claims are typical of other putative class members; fifth, Plaintiff is a competent class representative; and, finally, Plaintiff has retained counsel experienced in prosecuting FDCPA matters and consumer class actions.

The prerequisites of predominance and superiority have also been met. Congress specifically contemplated class actions as a means of enforcing the FDCPA. See 15 U.S.C. § 1692k(a)(2)(B). The likely interest of class members in prosecuting claims against Defendant individually is small, even in the case of a clear statutory violation, because statutory damages are capped under the FDCPA. Even if individual litigation were practical, class action treatment is more efficient than the management of myriad individual actions by consumers standing alone.

Defendant's arguments opposing class certification lack

force.  Defendant's contention that Plaintiff is not an adequate class representative because she is a "serial filer" misses the point.  If the specifics of her situation fit within the definition of the class, which Defendant does not dispute, her role in other cases is irrelevant.  Moreover, Defendant's argument that Plaintiff lacks an understanding of her claim is supported only by out-of-context citations to the record.  As Plaintiff's counsel points out, Plaintiff in her deposition exhibited more than adequate knowledge of the basics of her lawsuit.

The need for some individual analysis of class members' claims is no bar to certification on the facts of record here.  Ascertaining precisely which collection letters were sent to Westmoreland County can be easily accomplished based on zip codes contained in discovery disclosures.  There can, moreover, be no objection based on any confusion between business debtors and consumer debtors, because the pertinent credit advances made by Chase involved only consumer debts.

Finally, the fact that the class has been drawn to include only residents of Westmoreland County, as opposed to Pennsylvania residents generally, is no bar to class

certification.  First, as Plaintiff points out, in class action suits under the FDCPA, no authority requires the participation of the broadest possible class.  <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 341 (7th Cir. 1997).  Second, Plaintiff's explanation for its decision to limit the class to Westmoreland County makes sense from the point of view of the class members.  Because the FDCPA caps statutory damages at 10% of a defendant's total net worth, certification of a class consisting of all affected residents of Pennsylvania would result in a miniscule recovery for each class member. Significantly, Plaintiff's counsel offered at oral argument to modify the class definition to include a state-wide population, if the court preferred.  Counsel's motive to enhance the chance of some noticeable recovery by the actual injured parties is laudable, and the court will leave the proposed class definition as it stands.  Because the statute of limitations has already expired for FDCPA violations based on this set of facts, Defendant's risk of being pummeled by class actions drawn from each of Pennsylvania's sixty-seven counties is nonexistent.  In some other scenario, where the risk of prejudice to a defendant is

greater, the analysis might be different.

Based on the foregoing, the motion for class certification will be allowed.

### IV.　CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment as to liability (Dkt. No. 65) is hereby ALLOWED, and Defendant's motion for summary judgment (Dkt. No. 62) hereby DENIED. Plaintiff's motion for class certification (Dkt. No. 63) is hereby ALLOWED.  The court has this day allowed Plaintiff's proposed Order Certifying Class, with the agreed modification permitting Plaintiff's counsel to submit a proposed form of Class Notification for review by the court within 45 (not 20) days and allowing Defendant to produce the Class List within 45 days as well.

It is So Ordered.

>                         /s/ Michael A. Ponsor
>                         MICHAEL A. PONSOR
>                         U.S. DISTRICT JUDGE